RAMÍREZ, DEMANDANTE Y APELADO, v. PUMARES ET AL.,
DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Mayagüez
en pleito sobre reivindicación e indemnización.

MOCIÓN sobre desestimación de apelación.

No. 1900.—Resuelto en febrero 27, 1920.

COMPRAVENTA POR PRECIO ALZADO—PRUEBA DE LOS TÉRMINOS DE UN CONTRATO
ESCRITO.—El que compra una finca por precio alzado y no a un tanto por
unidad de medida, no está obligado a devolver el exceso que resultare en
la cabida o a pagar su valor; y cuando del contrato no resulta que el com-
prador ha reconocido algún derecho a favor del vendedor o de otra persona,
no será admisible prueba de ese reconocimiento, de acuerdo con el artículo
25 de la Ley de Evidencia, a menos que se tratare de un contrato indepen-
diente y como tal se probare, para lo cual, tratándose de un derecho domi-
nical, se requiere prueba robusta y convincente.

APELACIÓN—PARTES CONTRARIAS—NOTIFICACIÓN DE APELACIÓN—DESESTIMACIÓN
DE APELACIÓN.—No procede la desestimación del recurso por el motivo de no
haberse notificado la apelación a las personas citadas de evicción, cuando
la sentencia que ha de dictar el Tribunal Supremo no privará al comprador
en todo o en parte de la finca comprada. En tales casos las personas cita-
das de evicción no son partes contrarias.

Los hechos están expresados en la opinión.
Abogado del apelante: Sr. R. del Toro Soler.
Abogado del apelado: Sr. J. Sabater.

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del
tribunal.

Se trata de un recurso de apelación interpuesto por los
demandados contra la sentencia que dictó la Corte de Dis-
trito de Mayagüez el 29 de mayo de 1918 en los términos
que luego expresaremos.

Son hechos aceptados por ambas partes y probados ade-
más en el juicio, los siguientes:

Que por escritura pública otorgada en la ciudad de Ma-
yagüez a 20 de abril de 1908 ante el Notario Rodolfo Ra-
mírez Vigo, Severiano Ramírez, con el consentimiento de su
esposa Isolina Marini, vendió a Rosalía Pabón viuda de Col-
berg, por precio de $500, una finca con cabida de cien cuer-
das y casa-habitación para vivienda radicada en el barrio de

Boquerón del Municipio de Cabo Rojo, lindante al norte con Francisco Ays, antes, hoy Francisco Aimat, al sur con Severiano Ramírez, al este con Josefa Carbonell, antes, hoy Rodolfo Colberg y Antonio Martí, y al oeste con el mar, cuya finca es una disgregación de otra de doscientas cuerdas nombrada "Casabe", de la propiedad del vendedor. Dicha escritura contiene una cláusula en virtud de la cual "la compradora reserva al vendedor el derecho a hacer medir la finca para dividirla por mitad dentro de los puntos que reconozcan los colindantes y renuncia a su favor toda responsabilidad que pudiera exigirle con motivo de la venta, del terreno vegetal dentro de los puntos a que se ha hecho mención."

Por otra escritura otorgada en la misma ciudad de Mayagüez y ante el propio Notario Ramírez Vigo a 12 de mayo de 1908 Rosalía Pabón viuda de Colberg vendió a Pantaleón Rodríguez y a Monserrate Acosta, por precio de $600, la finca que había adquirido de Severiano Ramírez.

Por otra escritura otorgada en Cabo Rojo a 27 de mayo de 1915 ante el Notario Plinio L. Castro, Pantaleón Rodríguez, con el consentimiento de su esposa Ana Padilla y Arroyo, vendió a los menores Consuelo, Amparo y Donato Pumares y Valle, representados por su padre Donato Pumares Escabí, por precio de $800, la participación dominical indivisa que tenía en la expresada finca de cien cuerdas, con cuantos derechos y acciones le correspondieran o pudieran corresponderle en dicho condominio, sin reservación alguna.

Por otra escritura otorgada en 1°. de julio de 1916 en el poblado de "Boquerón" del Municipio de Cabo Rojo ante el Notario Miguel del Toro Colberg, Monserrate Acosta, con el expreso consentimiento de su esposa María Padilla, vendió a Miguel Carlo Pabón por precio de $500 el condominio de una mitad indivisa de la finca de cien cuerdas que le correspondía por compra a Rosalía Pabón.

Con motivo de la anterior venta Donato Pumares Escabí, en representación de sus menores hijos Consuelo, Amparo y Donato Pumares y Valle, interpuso demanda de retracto con-

tra Miguel Carlo Pabón y su esposa Mercedes Aimat para
ser subrogado en el derecho de condominio adquirido por Mi-
guel Carlo en la finca de cien cuerdas de que los menores
expresados eran condueños, habiendo obtenido sentencia a
su favor los menores demandantes en 18 de agosto de 1916,
y en su consecuencia por escritura pública de 9 de octubre
del mismo año ante el Notario Ricardo del Toro Soler, el
márshal de la Corte de Distrito de Mayagüez traspasó a fa-
vor de dichos menores el dominio que los consortes Miguel
Carlo Pabón y Mercedes Aimat habían adquirido por com-
pra a Monserrate Acosta, en las mismas condiciones en que
fué hecha esa adquisición.

Todos los documentos mencionados fueron inscritos en el
Registro de la Propiedad de San Germán y no hay discu-
sión alguna sobre los contratos en ellos envueltos.

Pero Severiano Ramírez al consignar dichos contratos en
su demanda, alega que al vender él la finca de cien cuerdas
a Rosalía Pabón se calculó entre los contratantes que la finca
principal tenía una extensión de doscientas cuerdas según
aparecía de la documentación, y posteriormente se practicó
una mensura de la finca principal, resultando ésta con una
cabida de doscientas cuarenta cuerdas, habiendo convenido
entonces los contratantes en que el demandante tenía derecho
a un excedente de veinte cuerdas que estaban incluídas en
la parte segregada o sea en la finca vendida por Ramírez a
Rosalía Pabón; que con motivo del exceso de veinte cuerdas
se convino que éstas estaban situadas en la parte sur de la
finca principal de doscientas cuerdas, colindando esas veinte
cuerdas al norte con las cien cuerdas vendidas a Rosalía Pa-
bón, hoy de los demandados menores hijos de Donato Pu-
mares, al sur con el resto de la finca principal propiedad del
demandante, al este con terrenos de Josefa Carbonell, que
hoy son de Miguel Carlo y Pabón, y al oeste con el mar;
que se convino además entre Severiano Ramírez y Rosalía
Pabón inmediatamente después de practicada la mensura, en
que la compradora continuaría poseyendo las veinte cuerdas

bajo condición de que había de entregar al demandante en
cada cosecha la tercera parte de los frutos que se recolecta-
ran en esa parcela de terreno; que al vender Rosalía Pabón
a Pantaleón Rodríguez y Monserrate Acosta en común y pro-
indiviso la finca de cien cuerdas, reconocieron los comprado-
res al verificarse la venta que la parcela de veinte cuerdas
era propiedad del demandante y continuaron con éste el con-
trato de entregarle la tercera parte de las cosechas que se
recolectaran en la parcela de veinte cuerdas, como así lo ha-
bían cumplido los compradores; que al vender Pantaleón Ro-
dríguez su mitad proindivisa en la finca de cien cuerdas a
Donato Pumares en representación de sus menores hijos Con-
suelo, Amparo y Donato reconoció Donato Pumares, por ha-
bérselo advertido el vendedor Rodríguez al verificarse la
venta, el derecho de dominio que tenía el demandante a la
parcela de veinte cuerdas y el contrato de usufructo que exis-
tía entre Pantaleón Rodríguez y Severiano Ramírez, habiendo
convenido Donato Pumares en julio de 1916 con el deman-
dante Ramírez en que le entregaría la tercera parte de la
cosecha que se recolectara en la parcela de veinte cuerdas y
le entregaría además una vez terminada la cosecha la parcela
misma por no convenirle continuar con el contrato de usu-
fructo; que al vender Monserrate Acosta su condominio a
Miguel Carlo y Pabón también reconoció éste como de la pro-
piedad del demandante la parcela de veinte cuerdas que es-
taban incluídas en el perímetro cercado de la mitad de la
finca principal; que Donato Pumares sembró de maíz la par-
cela de veinte cuerdas y en la cosecha de 1917 recolectó 600
quintales de ese fruto que vendió a razón de $3 el quintal,
rindiendo dicha cosecha la suma de $1,800 sin que le haya
entregado los $600 que le correspondían como importe de la
tercera parte de la cosecha, y que además había sembrado
nuevamente de maíz la parcela de veinte cuerdas, cuya co-
secha sería por lo menos de 600 quintales que a razón de
$3 el quintal habían de rendir $1,800; y que la parcela de
veinte cuerdas tiene actualmente un valor de $1,000.

La demanda concluye con la súplica de que se dicte sentencia condenando al demandado Donato Pumares a pagar al demandante la suma de $1,200 por razón del maíz producido y además la suma de $1,000 como precio de la parcela de terreno, declarándose en caso de que el demandado se negare a verificar ese pago que el demandante es la única persona dueña de la parcela de terreno y en su consecuencia le sea entregada.

A la anterior demanda opusieron tanto el demandado Donato Pumares a nombre propio como Antonio Valle, defensor de los menores hijos de Pumares, las excepciones previas de que la demanda no aduce hechos suficientes para determinar una causa de acción en contra de ellos, y aun en el supuesto de que la adujera, tal acción habría prescrito según los artículos 1372 al 1375 del Código Civil, cuyas excepciones fueron desestimadas por la corte.

A petición de Donato Pumares fueron citados de evicción Pantaleón Rodríguez, Monserrate Acosta y Miguel Carlo Pabón, anteriores vendedores de la finca en litigio.

Donato Pumares y sus menores hijos contestaron la demanda aceptando los diversos contratos de venta en ella relacionados, pero negando en absoluto que los terrenos vendidos fueran mensurados y resultaran con un exceso de cabida de veinte cuerdas y que sobre ese exceso hubiera él celebrado convenio alguno con sus vendedores.

También contestaron la demanda Pantaleón Rodríguez, Monserrate Acosta y Miguel Carlo Pabón, y después de aceptar las alegaciones en ella contenidas suplicaron se les libre de toda responsabilidad al dictarse la sentencia correspondiente.

Celebrado el juicio la corte dictó sentencia en 29 de mayo de 1918 por la que decreta y ordena que Severiano Ramírez es el único y exclusivo dueño de la parcela de veinte cuerdas, que se describe, cuya parcela debe ser entregada al demandante, y asimismo decreta y ordena que Severiano Ramírez recobre y obtenga del demandado Donato Pumares Escabí,

la suma de $600 importe de la parte de las cosechas que ha recolectado en dicha parcela de terreno, con costas, gastos, desembolsos y honorarios de abogado a cargo del demandado.

Contra la anterior sentencia interpuso la representación de Donato Pumares y sus hijos recurso de apelación para ante esta Corte Suprema, y alegan como·motivos del recurso: 1°., que la corte cometió error al desestimar la excepción previa de que la demanda no aduce hechos suficientes para determinar una causa de acción; 2°., que igualmente erró al desestimar la excepción de prescripción de la acción ejercitada; y 3°., que también cometió otro error al dar a la evidencia del demandante un valor probatorio que no tiene.

Para sostener el primero y segundo error apuntados, alega la parte apelante que los menores hicieron la adquisición de las dos partes que constituyen la finca de cien cuerdas segregada de la de doscientas cuerdas de Severiano Ramírez por un precio alzado y no a razón de un tanto por unidad de medida, sin que, por tanto, hayan incurrido en la obligación de entregar al demandante el exceso que resulte o su valor; pero como Severiano Ramírez funda su acción no solamente en el exceso de· veinte cuerdas que resultó en los terrenos que por título originariamente derivado de Ramírez adquirió Pumares sino también en un convenio que con éste hizo de continuar en posesión de esas veinte cuerdas ·con obligación de entregárselas luego y hacerle partícipe de la tercera parte de las cosechas que recolectara, entendemos que los preceptos del Código Civil invocados por los apelantes para sostener sus excepciones no son aplicables al presente caso.

Examinemos el tercer error consistente en la errónea apreciación de las pruebas.

Declara Severiano Ramírez que al pasar la escritura de venta a Rosalía Pabón mandaron medir la finca; que hizo la mensura un agrimensor de Lajas que no recuerda, y cree que murió; que el agrimensor no hizo plano alguno de la finca pues la mensura se practicó únicamente para ver si

había o no doscientas cuerdas, y resultó que había veinte cuerdas de más en lo vendido; que cuando Donato Pumares compró las dos pertenencias de Monserrate Acosta y Pantaleón Rodríguez convino con el Ramírez en quedarse con las veinte cuerdas y trabajarlas a la tercera, dándole el beneficio de la tercera parte del producto, sin que después haya respetado el convenio; que Ramírez intervino en la venta hecha por Pantaleón Rodríguez a Donato Pumares, aconsejando el negocio a Pumares y como había diez cuerdas más en la parte vendida por Pantaleón fué pactado que Pumares recibiría la escritura de las cincuenta cuerdas y se quedaría con las diez cuerdas trabajando a la tercera según hacía Pantaleón Rodríguez, y que cuando Miguel Carlo le compró a Monserrate Acosta éste advirtió al comprador que había sesenta cuerdas en el terreno que le vendía pero que él le vendía solamente cincuenta cuerdas, pues las otras pertenecían a Ramírez, con cuya manifestación no estuvo conforme Carlo por lo que mandó medir la finca por un agrimensor y encontró que en efecto había en las dos pertenencias veinte cuerdas, las que trató Miguel Carlo de comprar a Ramírez porque no le convenía quedarse con terrenos a la tercera, y como Ramírez no accediera a sus deseos, convino Carlo en quedarse con las veinte cuerdas para sembrarlas a la tercera; que las ciento veinte cuerdas forman un solo cuerpo sin que materialmente las veinte cuerdas puedan identificarse por puntos, por más que quedan en la colindancia de Severiano Ramírez.

Declara Pantaleón Rodríguez que él y Monserrate Acosta compraron a Rosalía Pabón una finca de cien cuerdas, pero como la vendedora les dijo siempre que en la finca había veinte cuerdas más que eran de Severiano Ramírez, se quedaron con ellas para trabajarlas dando a Ramírez la mitad del producto cuando él daba la semilla, y la tercera parte cuando ellos ponían bueyes y semilla, como así lo cumplieron; que al vender a Donato Pumares su parte explicó a Pumares lo que ocurría con Ramírez y aceptó el negocio bajo

esa base; que compraron la finca sin medirla y mientras fueron dueños de ella no se cuidaron de hacerlo, pero se midió después cuando fué de Donato Pumares y Monserrate Acosta.

Monserrate Acosta declara que compró en unión de Pantaleón Rodríguez a Rosalía Pabón una finca de cien cuerdas y como en ella había veinte cuerdas de más, de la propiedad de Severiano Ramírez, también se quedaron con ellas dando a éste la tercera parte del beneficio durante los siete o seis meses que las poseyeron; y que cuando vendió a Miguel Carlo Pabón se lo hizo saber y para él desengañarse si había las veinte cuerdas de más llamó a un agrimensor, quien las mensuró, resultando de la mensura ciento veinte cuerdas; que al comprar la finca la aceptaron como si tuviera una cabida de ciento veinte cuerdas, sin que se cuidaran de medirla; que el agrimensor a que ha aludido se nombraba Grullé y que sabe que la mensura que se practicó dió ciento veinte cuerdas porque él mismo se lo dijo y le cobró $18.34, habiéndose ajustado el trabajo a veinte centavos la cuerda, y que cuando él y Pantaleón Rodríguez trabajaban la finca sabían donde estaban las veinte cuerdas de Severiano Ramírez, a saber, en la colindancia de ellos y de Severiano Ramírez, formando una punta de tierra de Saliente a Poniente.

Miguel Carlo declara que compró a Monserrate Acosta una finca de cincuenta cuerdas que era parte indivisa de una finca mayor de cien cuerdas, y que el Acosta le expresó que había sesenta cuerdas, de las cuales eran diez de Severiano Ramírez; exigió a Acosta que practicara la mensura, habiendo buscado entonces a don Gil quien mensuró el terreno saliendo ciento veinte cuerdas, habiendo pagado el testigo la mensura por orden de Acosta, o sean $16 ó $17, sin que se levantara plano alguno de la finca; que cuando compró a Monserrate Acosta las cincuenta cuerdas, le escribió a Severiano Ramírez que si quería venderle las diez cuerdas que le correspondían o si quería un deslinde, y habiendo contestado Ramírez que estaba conforme en deslindar los terrenos, Donato Pumares se opuso y no pudo hacerse el deslinde, y que las diez

cuerdas quedaban en la parte del sur, a lo largo de Saliente
a Poniente.

Gumersindo Luna declara que una noche se encontraba
en la casa de Severiano Ramírez y por la madrugada llegó
Donato Pumares a decirle que no mandara a don Gil a me-
dir las veinte cuerdas porque no quería verlo allí y que él
se quedaría con las veinte cuerdas, dándole la tercera parte
de los productos.

En relación con la anterior declaración de Gumersindo
Luna explica el demandante Severiano Ramírez que sabedor
Miguel Carlo de que Donato Pumares había depositado un
dinero para retraer la finca que Carlo había comprado a Mon-
serrate Acosta, salió a comprar al testigo las veinte cuerdas
a que se refiere el presente pleito y el testigo le dijo que las
haría mensurar y deslindar para ver si le convenía vender-
las; que escribió al agrimensor encargándole que el lunes pró-
ximo fuera a medir la finca para deslindar las veinte cuerdas
de Monserrate Acosta y de Pantaleón Rodríguez, y también
escribió a Pumares y a Miguel Carlo dándoles aviso de la
mensura que se iba a practicar con el fin de que fueran a
presenciarla; que un mismo peón llevó ambas cartas a sus
destinatarios y Pumares dijo que como el asunto estaba en
los tribunales no permit´a que nadie entrara en el terreno ni
él iría tampoco allí y entonces por medio del mismo peón
expresó a Pumares que al día siguiente pediría el deslinde
judicial por la corte; que Pumares queriendo evitar la rea-
lización de esa idea llamó al testigo serían las 4 ó las 5 de
la mañana y convinieron, para evitar disgustos, en que Pu-
mares se quedara con las veinte cuerdas a la tercera según
las tenían Pantaleón Rodríguez y Monserrate Acosta; que
Pumares aceptó las veinte cuerdas en esas condiciones y en
una ocasión, o sea en 8 de noviembre de 1916 escribió al tes-
tigo una carta en que le pedía semilla de algodón para sem-
brar en las veinte cuerdas, y que un hermano de Pumares,
llamado José Escabí en la colindancia de esas veinte cuerdas
con otros terrenos del Ramírez y en una extensión de diez

cuerdas sembró también maíz y algodón, por el año de 1915 a 1916. Severiano Ramírez presentó la carta a que alude en su declaración, la que fué reconocida por Donato Pumares, y dice así:

"Amigo don Sebero: El terreno lo tengo rompido hace tiempo pero no he podido sembrarlo, he pensado, como es muy tarde, sembrarlo de algodón y habichuelas, así es que necesito semilla de algodón; dígame si Ud. tiene para mandar a buscar una poca para completar. Contésteme si la hay porque enseguida que haya dos o tres días de seca voy a sembrar. Suyo afectísimo, (firmado) D. S. Ps."

Donato Pumares, conocido por Donato García Escabí, refiere que no tuvo con Pantaleón Rodríguez otra transacción que la que consta en la escritura de venta de su condominio en la finca de cien cuerdas y que Pantaleón Rodríguez nada le advirtió sobre que hubiera en la finca veinte cuerdas de Ramírez, lo cual oyó decir posteriormente o sea desde que llevó a Miguel Carlo a la corte ejercitando la acción de retracto; que en terrenos de Severiano Ramírez separados de los suyos ha sembrado maíz pues para ello le pidió un cercado y mandó a arar como veinte y dos cuerdas, llegando a sembrar veinte solamente, pero esa finca era independiente de la del testigo y separada de ésta por guardarraya de alambre; que la siembra produjo 350 y pico de pesos; que a Severiano Ramírez entregó a cuenta de lo que le correspondía por anticipado $70 en una orden contra Antonio Valle a su favor y además le hizo entrega de 37 pesos y centavos en billetes y monedas y que la carta que ha reconocido, presentada por Severiano Ramírez, se refiere a semilla para sembrar en el terreno que le había cedido Ramírez y no a otros terrenos.

La orden de $70 a que se refiere Pumares es un cheque expedido en 1°. de febrero de 1917 a la "Caja de Economías y Préstamos" de Cabo Rojo a la orden de Severiano Ramírez y firmado por Antonio Valle, cuyo cheque confiesa Severiano Ramírez haber cobrado, como también le pagó Donato Gar-

cía 37 pesos y centavos, refiriéndose esas cantidades al pago que debía hacerle José Escabí, hermano de Donato Pumares, por el maíz cosechado en los terrenos que le había dado para siembra.

El testigo Sebastián Arroyo afirma haber trabajado. en unas cuerdas de terreno de Severiano Ramírez que éste cedió a Donato Pumares para sembrar maíz, colindantes con terrenos de Pumares.

Tales son, en síntesis, las pruebas traídas al juicio en relación con los fines que persigue el demandante en su demanda.

Sean cuales fueren los convenios de Severiano Ramírez con Rosalía Pabón, de ésta con Pantaleón Rodríguez y Monserrate Acosta, y de Monserrate Acosta con Miguel Carlo Pabón, con motivo del exceso de veinte cuerdas que se presume había de más en la mitad de la finca de doscientas cuerdas de la propiedad de Ramírez, de cuya mitad llegaron a ser dueños los menores hijos de Donato Pumares en virtud de sucesivos traspasos, esos convenios no afectan ni obligan bajo concepto alguno al representante de dichos menores, pues no fueron inscritos en el registro de la propiedad. Y aunque admitamos que los menores compradores adquirieron la parte de los terrenos de Pantaleón Rodríguez con conocimiento dado por éste de que Ramírez era dueño de veinte cuerdas que había de más en las cien cuerdas de que formaba parte el terreno vendido a los menores, esa circunstancia no se hizo constar en la escritura de venta que fué la última expresión de la voluntad de las partes contratantes y a ella, por tanto, debían atenerse. *Cintrón & Aboy* v. *Solá*, 22 D. P. R. 262.

En cuanto a la adquisición hecha de Miguel Carlo por los menores a virtud de derecho de retracto, adquirieron de Carlo sin reconocer en la escritura derecho dominical alguno a favor de Ramírez, y esa escritura vino a ser la ley del contrato.

Estimamos aplicable. al presente caso el artículo 25 de la Ley de Evidencia de 9 de marzo de 1905, que dice así:

"Art. 25.—Cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:

1. Cuando una equivocación o imperfección en el documento fuere alegada en el litigio.

2. Cuando la validez del convenio constituyere el hecho controvertido.

Pero este artículo no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, según lo definido en el artículo veinte y ocho, o para explicar una ambigüedad extrínseca, o probar ilegalidad o fraude. La palabra 'convenio' incluye escrituras y testamentos, así como contratos entre las partes.''

Y el artículo 28 reza como sigue:

"Art. 28.—Para la debida interpretación de un documento, las circunstancias bajo las cuales fuese otorgado, inclusa la situación del objeto a que se contrayere, así como la de las partes, podrán también demostrarse, a fin de que el juez se coloque en la situación de las personas cuyo lenguaje estuviere llamado a interpretar.''

Es de notar que la parte demandante no alega equivocación o imperfección en los títulos de propiedad de los menores demandados ni impugna la validez de los mismos, ni los somete a la interpretación judicial, por lo que no concurriendo las excepciones que marca el artículo 25 transcrito, tenemos que llegar a la conclusión de que las escrituras de 27 de mayo de 1915 y 9 de octubre de 1916, en virtud de las cuales adquirió Donato Pumares para sus hijos los terrenos que hoy poseen, deben considerarse como que contienen todas las condiciones de los contratos de compraventa consignados en aquellos documentos.

"Dicha regla'', como ya dijimos en el caso de *Morales* v. *Díaz et al.*, 24 D. P. R. 739, "es algo más que una mera

cuestión de prueba.  Es una declaración de la política que debe observarse, hecha por la Legislatura.  Tiene por objeto, lo mismo que el estatuto inglés de fraudes, de donde deriva su origen, el evitar controversias de la naturaleza de la que ahora consideramos.''

Pero aun admitiendo que fuera un contrato completamente independiente el de reconocimiento del dominio de las veinte cuerdas de terreno por Pumares a favor de Severiano Ramírez, a que se refieren tanto Severiano Ramírez como los testigos Miguel Carlo y Gumersindo Luna, y cuyo contrato niega Donato Pumares, la prueba de ese contrato, para admitir su existencia, debe ser robusta y convincente, dada la circunstancia de tratarse del reconocimiento de un derecho real de dominio a favor de Ramírez sobre parte de terrenos adquiridos por escrituras públicas para sus menores hijos sin reserva de tal derecho.

Cuando se trata de actos o contratos en que de ordinario suelen intervenir escrituras, documentos privados o algún principio de prueba por escrito, como sucede con la creación, trasmisión, modificación o extinción de derechos reales sobre bienes inmuebles, recomienda el artículo 1216 del Código Civil que los tribunales cuiden de evitar que por la simple coincidencia de algunos testimonios, a menos que su veracidad sea evidente, queden definitivamente resueltos los negocios envueltos en tales actos o contratos.

La prueba aportada al juicio por el demandante, lejos de ser robusta y convincente es muy defectuosa.  No nos satisface.  Ni siquiera se sabe con fijeza cuál fué el perito que mensuró los terrenos, pues el demandante dice que hizo la mensura un agrimensor de Lajas que no recuerda y cree que murió, el testigo Monserrate Acosta lo designa con el nombre de Grullé, y el testigo Miguel Carlo con el nombre de Gil, y por más que los tres afirman que se practicó la mensura, no se formó de ella plano alguno, ni quedó constancia escrita, como era lo natural y corriente en toda persona que cuida de sus propios asuntos con celo ordinario.

El demandante-apelado solicitó la desestimación del recurso por no haber sido notificado el escrito de apelación a los que fueron citados de evicción, Pantaleón Rodríguez, Monserrate Acosta y Miguel Carlo Pabón, y para la discusión de esa moción fué señalado el mismo día de la vista del recurso.

Ciertamente que la notificación del escrito de apelación no se hizo a los individuos anteriormente relacionados, pero entendemos que esa notificación no era necesaria por no ser partes contrarias en el caso, pues según hemos declarado repetidas veces, el concepto de parte contraria (*adverse party*) a que se refiere el artículo 296 del Código de Enjuiciamiento Civil, afecta únicamente a las partes que pueden ser afectadas por una modificación o revocación de la sentencia apelada. *Galafar* v. *Sucesión Morales,* 22 D. P. R. 491.

Al revocarse la sentencia apelada, a cuya conclusión última hemos de llegar, Pantaleón Rodríguez, Monserrate Acosta y Miguel Carlo Pabón no sufren perjuicio alguno, pues según el artículo 1378 del Código Civil, la evicción tendrá lugar cuando se prive al comprador por sentencia firme y a virtud de un derecho anterior a la compra, de todo o parte de la cosa comprada, y por la sentencia que hemos de dictar los compradores demandados, a cuya instancia se hizo la citación de evicción, no han de ser privados de todo o parte de los terrenos que compraron.

Por las razones expuestas procede que, declarándose sin lugar la moción de desestimación del recurso, se revoque la sentencia apelada que dictó la Corte de Distrito de Mayagüez en 29 de mayo de 1918, absolviéndose de la demanda a los demandados, sin especial condenación de costas.

> *Sin lugar la moción de desestimación, revocada la sentencia apelada y desestimada la demanda sin especial condenación de costas.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.